UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**SCOTT HAWTHORNE HUNT,**

Plaintiff,

v.                                    **No. 4:25-cv-00851-P**

**OFFICER ELIAS OLIVAREZ, ET AL.,**

Defendants.

## MEMORANDUM OPINION & ORDER

On December 24, 2025, Plaintiff Scott Hawthorne Hunt filed the First Amended Complaint against Defendants Corporal Elias Olivarez and Sergeant Matthew Foss. ECF No. 23. The Amended Complaint, in short, alleges Defendants violated Plaintiff's Fourth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983 when Defendants tried to handcuff Plaintiff. ECF No. 23. In response, on January 21, 2026, Corporal Olivarez and Sergeant Foss filed a Motion to Dismiss. ECF No. 26. Having considered the filings and for the reasons detailed below, the Court finds that the Motion to Dismiss should be **GRANTED**.

## BACKGROUND

Plaintiff's claims against Defendants arise out of the Defendants' actions while trying to handcuff Plaintiff on August 15, 2023. ECF No. 23. Plaintiff specifically alleges that Defendants used excessive force against Plaintiff in violation of his civil rights. ECF No. 23. Defendants filed a Motion to Dismiss under a theory of qualified immunity. ECF No. 26.

Plaintiff filed his Original Complaint on August 8, 2025. ECF No. 1. Defendants asserted a qualified immunity defense in their answer to Plaintiff's Original Complaint on October 20, 2025. ECF No. 11. Also on October 20, 2025, Defendants filed a motion for reply to their qualified immunity answer pursuant to *Schultea v. Wood*, 47 F.3d 1427 (5th Cir. 1995) and Fed. R. Civ. P. 7(a). ECF No. 12. In their motion, Defendants

established that Plaintiff provided inadequate factually specific allegations to prove his claim. ECF No. 12 at 2–3. Defendants' answer used screenshots from body-worn camera ("BWC") footage to make assertions about facts in the video which disproved untrue allegations in Plaintiff's original complaint. ECF No. 12. This Court granted Defendants' motion to file a Rule 7(a) reply on October 20, 2025. ECF No. 14. Plaintiff subsequently filed his First Amended Complaint, including BWC screenshots. ECF No. 23.

On August 15, 2023, Colleyville Police Department ("CPD") Officers conducted a traffic stop on Plaintiff's daughter, which had turned into a narcotics investigation. ECF No. 23 at 2; ECF No. 26 at 13. Plaintiff, Scott Hawthorne Hunt, arrived at the scene to bring his daughter's identification. ECF No. 23 at 2. Hunt walked over to Corporal Olivarez and his daughter. ECF No. 23 at 3. Corporal Olivarez asked Hunt to step back, and Hunt raised both hands. ECF No. 23 at 3. Corporal Olivarez pointed to where he wanted Hunt to stand and informed Hunt he would be handcuffed if he did not comply. ECF No. 26 at 14. Hunt did not step back and repeatedly told Corporal Olivarez to "put me in handcuffs." ECF No. 26 at 14; Barnett BWC 15:53–16:08; Olivarez BWC 19:19–19:38.

Defendants paused their narcotics investigation to engage with Hunt. ECF No. 16 at 14. At that point, Corporal Olivarez tried to put Hunt's arms behind his back to handcuff him. ECF No. 23 at 3; ECF No. 16 at 15.

Hunt pulled his arms away from Corporal Olivarez's attempt to handcuff him. ECF No. 23 at 3; ECF No. 26 at 15. In response, Defendants brought Hunt to the ground. ECF No. 23 at 4. Hunt resisted Defendants' attempts to handcuff him. ECF No. 26 at 16. One officer then laid on top of Hunt and the other officer held Hunt's arm to wait while additional officers responded to the scene. ECF No. 23 at 4; ECF 26 at 16; Barnett BWC 16:24–16:27. Corporal Olivarez pulled and twisted Hunt's arm behind his back. ECF No. 23 at 5. Hunt moved his legs around while Defendants held his arms down. Barnett 16:35–16:53.

Defendants held Hunt on the ground without handcuffing him because Hunt had complained about shoulder and arm pain. ECF No. 26 at 16. Defendants repeatedly asked Hunt to describe his injuries, to which Hunt responded, "The arm you just bent back and broke, stupid." ECF No. 26 at 16; Olivarez BWC 22:05–22:26. Hunt was then transported to the hospital where he was x-rayed before being transported to jail. ECF No. 26 at 17–18. He alleges he suffered severe injuries as a result. ECF No. 23 at 6.

Plaintiff's lawsuit is based on the events within the three seconds wherein Defendants pulled Plaintiff's arm behind his back. ECF No. 23 at 4; Barnett BWC 16:24–16:27.

## LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads factual content that allows the court to reasonably infer that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Unlike a "probability requirement," the plausibility standard instead demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Where a complaint contains facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

When reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto Ins.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the Court is not bound to accept legal conclusions as true. *Iqbal*, 556 U.S. at 678–79. To avoid dismissal, pleadings must show specific, well-pleaded facts rather than conclusory allegations. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). "When there are well-pleaded factual allegations, a court

should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

A court ruling on a motion to dismiss "may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Randall D. Wolcott M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citations and internal quotation marks omitted). Specifically, "where video recordings are included in the pleadings . . . the video depictions of events, viewed in the light most favorable to the plaintiff, should be adopted over the factual allegations in the complaint if the video blatantly contradict[s] those allegations." *Anderson v. Estrada*, 140 F.4th 634, 642 (5th Cir. 2025) (citations and internal quotation marks omitted). If plaintiff references video evidence and includes screenshots from the video in its complaint, the Court may properly consider the video evidence. *Id.*

**B. Section 1983 and Qualified Immunity**

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). To state a claim under § 1983, a plaintiff must allege facts that show that he has been deprived of a right secured by the Constitution and the laws of the United States, and the defendants were acting under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978).

1. The Qualified Immunity Standard

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted). The qualified immunity inquiry involves two prongs that the Court must answer affirmatively before an official is subject to liability: (1) whether the facts that a plaintiff has alleged constitute a violation of a constitutional right and (2) whether the right at issue was "clearly established" at the time of defendant's

4

alleged misconduct. *Id.* at 232. The second prong of the test can be sometimes "better understood as two separate inquiries: whether the allegedly violated constitutional right was clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in light of that then clearly established law." *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017) (citation and internal quotation marks omitted). When confronted with a qualified immunity defense at the pleadings stage, the plaintiff carries the burden to identify facts which, if proven, defeats the claim of immunity. *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019) (citation omitted).

## C. Fourth Amendment

The Fourth Amendment of the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures," and that "no Warrants shall issue, but upon probable cause." U.S. CONST. amend. IV. "[I]t is well established that a warrantless arrest without probable cause violates an individual's constitutional rights under the Fourth and Fourteenth Amendments." *Joseph v. Allen*, 712 F.3d 1222, 1226 (8th Cir. 2013). "[A] Fourth Amendment seizure occurs in one of two ways: either an officer applies physical force or an officer makes a show of authority to which an individual submits." *Sauceda v. City of San Benito*, 78 F.4th 174, 187 (5th Cir. 2023) (quotations omitted). Warrantless searches and seizures are unreasonable unless the government shows that an exception applies. *United States v. Aguirre*, 664 F.3d 606, 610 (5th Cir. 2011).

## ANALYSIS

The issue is whether Defendants are entitled to qualified immunity for their allegedly excessive use of force on Plaintiff on August 15, 2023. Here, the Plaintiff fails to allege that the Defendants violated their constitutional rights or any right clearly established as a matter of law. Because failure on either prong is grounds for granting qualified immunity, the Plaintiff's allegations are insufficient.

**A. Plaintiff fails to carry his burden of overcoming qualified immunity for Defendants because Plaintiff cannot establish a Constitutional violation nor show a violation of clearly established law.**

Plaintiff accuses Defendants of using excessive force, violating Plaintiff's Fourth Amendment rights and clearly established law, thus preventing qualified immunity.

1. <u>Plaintiff fails to overcome qualified immunity because his Fourth Amendment right was not violated when Defendants used reasonable force on Plaintiff resisting arrest.</u>
   a. *There is no evidence a constitutional violation occurred.*

Plaintiff's excessive-use-of-force theory leading to a Fourth Amendment violation rests upon a three second window where Defendants pulled Plaintiff's arm behind his back. ECF No. 32 at 5. Plaintiff thus contends that the use of force was unreasonable and, therefore, the Defendants should not be entitled to qualified immunity.

The Defendants, however, reasonably used force against Plaintiff, who was resisting arrest. The Fourth Amendment prohibits the use of objectively unreasonable force during a seizure. *Graham v. Connor*, 490 U.S. 386, 395–97 (1989). The reasonableness of an Officer's use of force is a totality-of-the-circumstances analysis, focusing on relevant events coming before the specific moment of force. *Barnes v. Felix*, 605 U.S. 73, 83 (2025).

Here, Plaintiff focuses on the three seconds where Defendants pulled Plaintiff's arm behind his back. This act did not violate Plaintiff's Fourth Amendment right because Plaintiff was interfering with a criminal investigation and resisting arrest—which led to the Defendants' use of force. Plaintiff disregarded Defendants' instructions to stand back while Defendants continued their narcotics investigation, told Defendants to handcuff him, and then pulled his arms away from Defendants.

Because Plaintiff both interfered with public duties and resisted arrest, it was not unreasonable for Defendants to bring Plaintiff to the

ground and pull Plaintiff's arm behind his back to restrain him under the totality of the circumstances.

> ### b. *The Officers' needed to use force to protect both the officers making the arrest and the ongoing narcotics investigation.*

Use of force analyses are fact dependent. *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009). Factors to consider include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Minor offenses weigh against the use of significant force. *Deville*, 567 F.3d at 167.

In *Deville*, the court used the *Graham* factors to conclude the district court erred in granting summary judgment to the defendant officers. *Id.* The court reasoned that the defendants breaking the plaintiff's window and placing her under arrest during a minor traffic violation was an excessive use of force. *Id.* at 168. In contrast to *Deville*, the *Graham* factors favor Defendants here because Plaintiff interfered with public duties by stopping a narcotics investigation, posed an immediate threat to officers through inflammatory language and proximity, and was actively resisting arrest when Defendants pulled his arm behind his back. Under *Graham*, Defendants' force was reasonable and not excessive.

The use of certain force after an arrestee has been restrained and handcuffed can be excessive and unreasonable, however, if not needed for the protection of officers. *Bush v. Strain*, 513 F.3d 492, 501–502 (5th Cir. 2008). In *Bush*, a defendant officer was not entitled to qualified immunity for excessive force when the officer slammed the plaintiff's face into a vehicle when the plaintiff was already handcuffed and subdued. *Id.* at 501. But again, here, Plaintiff was not handcuffed or subdued when Defendants pulled Plaintiff's arm behind his back.

7

Because Plaintiff had not already been restrained and handcuffed, Defendants' force was not excessive and unreasonable.

        *c.   The video footage clearly contradicts Plaintiff's allegations.*

Applying the *Bush* standard, the *Ramirez* court held that a district court did not err in denying a defendant officer qualified immunity on a plaintiff's claim for excessive force. There, defendant officers tased the plaintiff when he was handcuffed and subdued while lying face down on the ground. *Ramirez v. Martinez*, 716 F.3d 369, 379 (5th Cir. 2013). The court viewed the evidence in light most favorable to the plaintiff because the video footage submitted to the court did not blatantly contradict the plaintiff's version of the facts. *Id.* at 375.

Here, the relevant BWC video footage clearly contradicts the Plaintiff's version of events because the video indicates Plaintiff was not subdued when Defendants pulled his arm behind his back. Although Plaintiff was lying faced down, he was not handcuffed, and he was moving his legs when the Defendants pulled his arm back. In short, Plaintiff was not subdued when the Defendants used force to restrain him.

Therefore, Plaintiff fails to meet the first prong of qualified immunity because the facts that Plaintiff allege do not constitute a violation of a constitutional right.

2. <u>Plaintiff also fails to overcome qualified immunity because Plaintiff did not show Defendants' force was a violation of clearly established law.</u>
      *a.  Plaintiff bears the burden of presenting caselaw clearly establishing his right to be free from being forcefully restrained while interfering with a police investigation.*

The clearly established prong is difficult to satisfy. *Thompson v. City of Dall.*, No. 3:23-cv-2056-L, 2024 U.S. Dist. LEXIS 199052, at *10 (N.D. Tex. Sep. 24, 2024). There are two ways for the plaintiff to satisfy this prong. *Id.* at *11. First, the plaintiff must typically identify a case— usually a body of relevant case law—in which an officer acting under similar circumstances was held to have violated the Constitution. *Id.* (citations and internal quotation marks omitted). The plaintiff bears the burden to find a case in her favor that narrowly defines the law, meaning

8

the clearly established law must be particularized to the facts of the case and defined with specificity. *Id.* The central concept for this prong is fair warning. *Id.* at *12.

Second, the plaintiff can ask the court to look to an obvious case where analogous case law is not needed because the unlawfulness of the challenged conduct is sufficiently clear. *Id.* at *13. The standard for obviousness is high. *Id.* (citing *Joseph v. Bartlett*, 981 F.3d 319, 338 (5th Cir. 2020)). For instance, in *Thompson*, a plaintiff did not overcome the second prong of qualified immunity when he presented a case with distinguishable facts from the plaintiff's situation. *Id.* at *32. The court reasoned that because the facts were distinguishable, the plaintiff did not establish that every reasonable official in the officer's position would have had fair warning to understand that the alleged conduct violated clearly established law. *Id.*

Here, to satisfy the second prong of overcoming qualified immunity, Plaintiff would have needed to clearly establish his right to be free from being taken to the ground and restrained by officers when interfering with a narcotics investigation. Plaintiff's brief mentions various cases, as discussed above, but none of the cases present similar facts that would squarely govern Plaintiff's case. Like in *Thompson*, each case Plaintiff presented had distinguishable facts from Plaintiff's situation. Therefore, Plaintiff fails to carry his burden of demonstrating a clearly established right by identifying a case in which an officer acting under similar circumstances was held to have violated the Constitution.

> b. *Plaintiff does not have a clearly established right to be free from being taken to the ground and restrained by officers while interfering with a narcotics investigation.*

To the extent that Plaintiff appears to assert the *Ramirez* case as directly on point with Plaintiff's facts, the Court will construe Plaintiff's brief as seeking to establish that right. First, the *Ramirez* facts are distinguishable from Plaintiff's facts. Although the officer there similarly pulled the plaintiff's arm behind his back after the plaintiff pulled his arm away, the officer in *Ramirez* was denied qualified immunity not because of pulling the plaintiff's arm, but because he tased the plaintiff twice, including once while the plaintiff was already

handcuffed and lying face down on the ground. *Ramirez*, 716 F.3d at 379–380. The use of force after the plaintiff was subdued was grounds for denying qualified immunity in *Ramirez*, yet that is not so here.

*Ramirez* does not squarely govern this case because the facts are distinguishable. Unlike the plaintiff in *Ramirez*, Plaintiff here was never handcuffed. Although Plaintiff argues the cases are the same because Defendant used force after Plaintiff was subdued, Plaintiff was never fully subdued here and the Officers never used more force than necessary. Accordingly, Plaintiff fails to satisfy the second prong by failing to identify a clearly established right with specificity through case law.

Therefore, Plaintiff fails to meet the second prong of qualified immunity because the right at issue was not "clearly established" at the time of Defendants' alleged misconduct.

## CONCLUSION

For the reasons above, the Court **GRANTS** the Motion to Dismiss. Accordingly, Hunt's claims are **DISMISSED with prejudice.**

**SO ORDERED** on this **29th day of May 2026.**

_____
Mark T. Pittman
UNITED STATES DISTRICT JUDGE

10